FILED

2016 FEB 11 PM 2:48

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

Case No.  6:16-cv-234-Orl-18GJK

Anna Brundage,

    Plaintiff,

v.

Allied Credit Consultants LLC,

    Defendant.

**CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND FLORIDA CONSUMER COLLECTION PRACTICES ACT**

**JURY DEMAND ENDORSED HEREIN**

## INTRODUCTION

1. Millions of Americans are familiar with Rachel from Card Services.

2. Rachel from Card Services made pre-recorded robocalls blasted to people from coast to coast.

3. "At the FTC, Rachel from Cardholder Services is public enemy number one," said FTC Chairman Jon Leibowitz.

4. The FTC stated it, "got more than 200,000 complaints each month about telemarketing robocalls, including calls from 'Rachel' that pitch consumers with a supposedly easy way to save money by reducing their credit card interest rates. After collecting an up-front fee, however, the FTC believes that the companies do little if anything to fulfill their promises."

5. The FTC took action to stop many telemarketers involved in the "Rachel" scam.

6. However, Defendant Allied Credit Consultants LLC ("ACC") is now resurrecting the "Rachel" scam by trying to collect purported debts from "Card Services" operators.

7. This class action seeks to hold ACC accountable for the resurrection of this scam.

## PARTIES

8. Plaintiff, Anna Brundage, ("Plaintiff" or "Anna"), is a natural person who resided in Pleasant Hill, Missouri at all times relevant to this action.

9. Defendant, Allied Credit Consultants LLC, is a Florida Limited Liability Company that maintained its principal place of business in Orlando, Florida at all times relevant to this action.

## JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

11. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over the Plaintiff's claims under the Florida Consumer Collection Practices Act ("FCCPA") because those claims share a common nucleus of operative facts with each Plaintiff's claim under the FDCPA.

12. Pursuant to 28 U.S.C. § 1391(b), venue is proper because Defendant resides in this judicial district.

## STATEMENT OF FACTS

13. At all times relevant to this action, Defendant collected consumer debts.

14. Defendant regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

15. The principal source of Defendant's revenue is debt collection.

16. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

17. As described, *infra*, Defendant contacted Plaintiff to collect a debt that was allegedly incurred primarily for personal, family, or household purposes.

18. ACC seeks to collect purported "Card Services" debts.

19. "Card Services" was a telemarketing campaign that use ATDS robocalls to lure in consumers to a scam.

20. During the typical Card Services calls, consumers typically heard a prerecorded message from a female voice who often says her name is Rachel or Heather. Rachel's message offered consumers the opportunity to substantially lower their credit card interest rates and instructed them to press a number on their phone to be connected to a live representative for further details. When the consumer pressed the number on their telephone keypad, the consumer was connected to a live representative who works for Card Services. The representative told the consumer he or she works for Card Services, which tricked many consumers into thinking that Defendants have some affiliation with the consumer's bank or credit card company.

21. Card Services demanded illegal upfront fees and after charging or collecting their up-front fee from the consumer, sometime undertook a few rudimentary efforts to make it seem like they were attempting to reduce the consumer's credit card interest rates, such as setting up calls with the consumer's banks to ask for a lower interest rate or advising the consumer to open a new credit card with an introductory interest rate and then transfer existing balances to the new card. These tactics, however, rarely succeeded in obtaining any reduction in interest rates for the consumer, let alone the significant and long-term reductions and savings promised in the initial call. In short, most consumers who paid or were charged fees ended up with little to show for it, as they saved little to no money, were unable to get out of debt any faster, and did not receive the lowered credit card interest rates promised to them.

22. The FTC has taken action against certain companies involved in the "Rachel from Card Services" scam.

23. ACC seeks to continue this scam by targeting victims of the scam and demanding more money allegedly owed to "Card Services".

24. On November 12, 2015, a collection agent disclosing his name as David J. Greenburg called Anna in an attempt to collect a debt owed to "Card Services". Anna stated that she had never received anything in writing about this debt. Greenburg claimed that ACC had sent a letter and said Anna was calling the post office a liar. He gave her a list of credit card numbers. Greenberg threatened that he could damage her credit score. Greenberg scared Anna and caused her anxiety. Anna asked for a copy of the letter and provided her e-mail address.

25. ACC emailed Anna a collection letter dated 11/12/15. See Exhibit A.

26. The letter stated: "Original Creditor: Card Services".

27. This is a false representation.

28. Anna never had any Original Creditor named "Card Services".

29. ACC lied about the name of the source of the alleged debt.

30. The letter also stated Charge Off Date: 06-08-2013.

31. The statement suggested that the debt was related to Charged Off Credit Card Debt rather than the bogus "Card Services" scam.

32. The letter also stated, "Your account may be accruing interest on a daily basis, please contact our office for an exact payoff amount".

33. This representation also was misleading because the purported debt was not a credit card debt accruing interest.

34. Using this language, ACC made a false representation about the character, amount, or legal status of the alleged "Card Services" debt.

35. The letter demanded, "In order to prevent further collection activity on this account, you must remit payment immediately or call our offices today to negotiate a compromise settlement amount to resolve your past due account."

36. The letter overshadowed the dispute, validation, and verification rights under § 1692g because the letter made a demand for immediate payment within the 30 day validation period. See *Glackin v. LTD Fin. Servs., L.P.*, 2013 U.S. Dist. LEXIS 108031, *3-9 (E.D. Mo. 2013); See also *Swanson v. Mid Am, Inc.*, 1999 U.S. Dist. LEXIS 14302. *6 (M.D. Fla. 1999)(summary judgment granted to plaintiff when debt collector demanded payment within the 30 day validation period).

37. The letter also overshadowed the notice because it misled the reader about rights to prevent further collection activity by disputing the debt or demanding verification.

38. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

39. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

## CLASS ALLEGATIONS

40. Plaintiff brings this case against Defendant as a class action pursuant to 15 U.S.C. 1692k(a)(2)(B) and Fla. Stat. § 559.77.

41. The FCCPA Class is defined as all consumers who were sent a letter similar in form to Exhibit A by Defendant within the last two years.

42. The FDCPA Class is defined as all consumers who were sent a letter similar in form to Exhibit A by Defendant within the last year.

43. The class meets the numerosity requirements. Numerosity is evidenced by the fact that ACC sends form collection letters. See *Rawson v. Source Receivables Mgmt., LLC*, 289 F.R.D. 267, 269 (N.D. Ill. 2013)(holding numerosity can be inferred based on the fact that the dunning letter is, on its face, a form letter); See, e.g., *Jenkins v. Palisades Acquisition XVI, LLC*, 2009 U.S. Dist. LEXIS 28627, *5 (N.D. Ill. 2009); *Quiroz v. Revenue Prod. Mgmt.*, 252 F.R.D. 438, 441 (N.D. Ill. 2008); *Chapman v. Worldwide Asset Mgmt, LLC*, 04 C 7625, 2005 U.S. Dist. LEXIS 18881, 2005 WL 2171168, (N.D. Ill. Aug. 30, 2005); *Seidat v. Allied Interstate Inc.*, 03 C 0975, 2003 U.S. Dist. LEXIS 10413, 2003 WL 21468625 (N.D. Ill. Jun. 19, 2003); *Smith v. Short Term Loans, L.L.C.*, 99 C 1288, 2001 U.S. Dist. LEXIS 1554, 2001 WL 127303 (N.D. Ill. Feb. 14, 2001).

44. Numerosity can also be evidenced by online consumer complaints against ACC. See http://800notes.com/Phone.aspx/1-855-417-1781

45. This case meets the commonality requirement.

46. "Common nuclei of fact are typically manifest where . . . defendants have engaged in standardized conduct towards members of the proposed class by mailing them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (class action certified under Fair Debt Collection Practices Act ("FDCPA"), also *Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 568 (D. Minn. 2003) (finding commonality satisfied because "[i]f the letter violates the FDCPA as to any class member, it violates the Act as to all class members").

47. This case meets the typicality requirement. Plaintiff's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits.

48. Typicality has been found when the claims arise from the same alleged pattern or practice of collection conduct involving form collection letters. *Klewinowski v. MFP, Inc.*, 2013 U.S. Dist. LEXIS 130591, *6-7 (M.D. Fla. 2013).

49. This case meets the adequacy requirement. Plaintiff has no interests antagonistic to those of the rest of the class and Plaintiff's counsel are experienced in class action and FDCPA litigation and are able to conduct the proposed litigation.

50. This case meets the Rule 23(b)(3) predominance requirement because the common question to be decided is whether the form letters sent to Class members violate the FDCPA.

51. This case meets the Rule 23(b)(3) superiority requirement.

52. Class actions are contemplated in FDCPA actions by 15 U.S.C. 1692k(a)(2)(B). Courts have found class actions as a superior form of adjudication for FDCPA cases. See *Lewis v. ARS Nat'l Servs.*, 2011 U.S. Dist. LEXIS 100139, *15-16 (M.D. Ala. 2011); *Hartley v. Suburban Radiologic Consultant...*, 86 Fed. R. Serv. 3d (Callaghan) 1077 (D. Minn 2013)(holding FDCPA class action met superiority requirement).

53. These same requirements are met for the state law claim under the FCCPA.

## COUNT I

### Violation of the Fair Debt Collection Practices Act

54. Plaintiff re-alleges and incorporates by reference Paragraphs 13 through 52 above as if fully set forth herein.

55. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff and class members in connection with the collection of the debt.

56. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt from Plaintiff and Class Members.

57. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt from Plaintiff and Class Members.

58. Defendant violated 15 U.S.C. §1692g by overshadowing the required notice to Plaintiff and Class Members.

## COUNT TWO

### Claim Under the Florida Consumer Collection Practices Act

59. Plaintiff re-alleges and incorporates by reference Paragraphs 13 through 53 above as if fully set forth herein.

60. Defendant is seeking to collect alleged debts resulting from unfair and deceptive "Card Services" transactions.

61. Defendant has claimed and attempted to enforce a debt when such person knows that the debt is not legitimate by trying to collect the "Card Services" purported debts.

62. Defendants also asserted the existence of a legal right when such person knows that the right does not exist when claiming: "[y]our account may be accruing interest on a daily basis...."

63. Defendant knew that it was not collecting debts owed to a creditor called "Card Services" and knew that interest was not accruing on these debts.

## JURY DEMAND

64. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

65. Plaintiff prays for the following relief:

a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

b. Judgment against Defendant for actual damages, statutory damages, punitive damages, equitable relief, costs and reasonable attorney's fees pursuant to Fla. Stat. § 559.77.

c. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Hyslip & Taylor, LLC LPA

By:  /s/ H. Karen Gatto
One of Plaintiff's Attorneys

*Of Counsel*
H. Karen Gatto, Esq.
8270 Woodland Center Blvd.
Tampa, FL  33614
Phone: 800-675-5507
Email: kgatto@gattolaw.com